[No. 11224. Department Two. June 24, 1913.]

SEATTLE TAXICAB & TRANSFER COMPANY, Respondent, v.
E. O. KINNEY et al., Appellants.[1]

FRAUDS, STATUTE OF—ORAL CONTRACT OF EMPLOYMENT—WAIVER—
FAILURE TO PLEAD OR OBJECT TO EVIDENCE. The objection that an oral
contract for employment for five years is void under the statute of
frauds is waived by failing to raise it in the lower court either by
pleading it as a defense or by objecting to the admission of parol
evidence, or by assignment of error thereon in the superior court.

EVIDENCE—PAROL EVIDENCE TO VARY WRITING. Where a memoran-
dum of a sale of corporate stock recited the consideration for only
one-half of the stock, sold by one party, and was clearly intended to
cover only part of the transaction touching the sale by such half own-
er, and was incomplete on its face, oral evidence as to the consider-
ation for the balance of the stock purchased from another party is
not inadmissible as tending to vary the terms of the writing.

APPEAL—REVIEW—FINDINGS. Findings upon conflicting testimony
will not be disturbed when supported by the preponderance of the
evidence.

Appeal from a judgment of the superior court for King
county, Dykeman, J., entered January 29, 1913, upon find-
ings in favor of the plaintiff, in an action for an injunction.
Affirmed.

*Wm. C. Keith,* for appellants.
*Brightman, Halverstadt & Tennant,* for respondent.

ELLIS, J.—This is an appeal from a judgment enjoining
the defendant from engaging in the baggage transfer busi-
ness in the city of Seattle for a period of five years from and
after July 1, 1912, on the ground that he had entered into a
contract with the plaintiff not to do so. The circumstances
giving rise to this controversy, so far as material, are as fol-
lows: For some years prior to May, 1912, the Seattle Taxi-
cab Company was engaged exclusively in the taxicab busi-

[1]Reported in 132 Pac. 1013.

ness, and the Reliable Transfer Company and the Seattle Transfer Company were engaged in the baggage transfer and drayage business, in the city of Seattle. In the winter of 1911, the taxicab company, designing to take over the baggage transfer business of the two last mentioned companies, opened negotiations with the defendant, who, with one Hawkes, owned and controlled all of the 25,000 shares of the capital stock of the Reliable Transfer Company, save 2,250 shares owned by one Griffiths, which shares the defendant agreed ultimately to secure. It was finally agreed that the drayage equipment of the Reliable Transfer Company should be transferred to trustees for the defendant and Hawkes, leaving in the assets of the corporation the contracts and equipment of its baggage transfer business only, so that a transfer of the stock of that corporation would carry the corporate name and the contracts, equipment, and good will of that branch of the business. These were valued, for the purposes of the purchase, at $10,000, which the taxicab company agreed to pay for all of the stock. This was to be paid as follows: $2,500 in money, $5,000 by relieving the defendant and Hawkes from their personal liability as indorsers upon a note of the Reliable Transfer Company with a certain bank, and $2,500 in stock of the taxicab company at par value.

No one connected with the taxicab company had any knowledge of the transfer business, and it is conceded that one of the moving considerations to the purchase on the part of the taxicab company was that the defendant, who was very efficient in that business, should enter the employ of the taxicab company and manage its baggage transfer department. It was in this connection that the plaintiff claims that a verbal contract was made between the taxicab company and the defendant, whereby the defendant agreed, as an inducement to the purchase of the stock by the taxicab company, not to enter into the baggage transfer business in the city of Seattle, either personally or in connection with, or as an employee of, any one else excepting the taxicab company, for a period

of five years from the consummation of the purchase of the
stock by the taxicab company.

When the negotiations had reached this point between the
president and manager of the taxicab company, on the one
hand, and the defendant on the other, Hawkes was consulted
and on May 18, 1912, assented to the agreement, and the
purchase of the half of the capital stock of the Reliable
Transfer Company owned and controlled by him was then
consummated. He, however, asked that a written memoran-
dum be made, showing that he was to be relieved of liability
upon the above-mentioned note. A memorandum was accord-
ingly drawn up and signed by the taxicab company by its
manager and by the defendant and Hawkes. It fixed the
value of all the stock of the Reliable Transfer Company for
the purpose of the sale at $10,000, and recited the purchase
of half of the stock and equipment for $2,500 in money, and
the assumption by the taxicab company of the liability of
the defendant and Hawkes upon the $5,000 note above men-
tioned, and contained an agreement on the part of the taxi-
cab company to relieve them from that liability, and an agree-
ment on the part of the defendant and Hawkes to pay all
other liabilities of the Reliable Transfer Company accruing
prior to May 18, 1912. The $2,500 was then paid, a new
note endorsed by the taxicab company was placed in the bank,
the old note taken up, and half of the stock of the Reliable
Transfer Company was transferred to the taxicab company.
New officers were elected and Hawkes retired from the com-
pany. Throughout the negotiations it was agreed between
the taxicab company and the defendant that the Reliable
Transfer Company should be operated independently until
the purchase of the baggage transfer department of the
Seattle Transfer Company had been consummated, which
took place about July 1, 1912.

At that time, the defendant suggested that a written con-
tract for his employment by the taxicab company should be
made, indicating some little dissatisfaction with the situation,

but no written agreement was made. It was, however, agreed that, instead of turning over to the appellant $2,500 worth par value of the capital stock of the taxicab company as a consideration for the transfer of his half of the stock of the Reliable Transfer Company in addition to the assumption of the above mentioned note, there should be turned over to him $3,000 worth par value of. the stock of the taxicab company, which was accordingly done. The stock which he controlled, after having secured the. Griffiths stock, was, in exchange for this taxicab stock, transferred to the taxicab company, which thus became the owner of all of the stock of the Reliable Transfer Company. The Seattle Taxicab Company then changed its corporate name to the Seattle Taxicab & Transfer Company, and as such operated its taxicab business together with the baggage transfer business secured by the purchases from the Reliable Transfer Company and the Seattle Transfer Company.

The defendant continued in the employ of the plaintiff corporation, managing its transfer department until October 14, 1912, when the plaintiff, learning that the defendant was purchasing horses for the purpose of entering into the baggage transfer business on his own account in competition with the plaintiff, discharged the defendant and ultimately brought this suit to enjoin him from entering into such business. The evidence was in many particulars conflicting, but we think, by a fair preponderance, it established the foregoing facts.

The appellant claims that there was no competent evidence that he ever agreed not to engage in the transfer business in the city of Seattle for a period of five years, or for any time.

At the outset we deem it expedient to disclaim any intention in this case of passing upon the application of the one-year period of the statute of frauds to contracts such as that here involved. This court has never passed directly upon the question, and the decisions from other jurisdictions are hopelessly divided. 2 Am. & Eng. Ency. Law (2d ed.), p. 495.;

Browne, Statute of Frauds (5th ed.), § 282b. Though this question was obviously involved in the case, it was waived by the failure to raise it, either by pleading the statute as a defense, or by objecting to the admission of parol evidence on this ground in the trial court, or by assignment of error or by argument on the appeal here. We now notice it only in order that this decision may not be deemed authority on that question.

The appellant contends that parol proof of such an agreement was inadmissible in that it tended to change, vary or contradict the written memorandum of sale. This contention is untenable. The written contract shows upon its face that it was only intended as a memorandum touching those things connected with the sale of the half of the stock of the Reliable Transfer Company controlled by Hawkes and to cover certain stipulations as to the assumption of liabilities in which all three of the parties to the sale were interested. The memorandum is incomplete upon its face. While it fixes a value for all of the stock for the purpose of the sale, it recites a sale of only half of the stock and a payment of only a part of the consideration. It makes no mention of a transfer of the other half of the stock, nor of the stock of the taxicab company which the appellant took in exchange therefor. This memorandum was clearly never intended to cover any part of the transaction relating to the other half of the stock of the Reliable Transfer Company which was afterwards transferred by the appellant to the taxicab company, nor any of the other matters connected with the agreement in which the appellant and the taxicab company alone were concerned. The parol testimony as to the agreement on the appellant's part to abstain from the transfer business in the city of Seattle for a period of five years, except as an employee of the respondent, did not tend to vary the terms of the written memorandum, but did tend to establish independent stipulations between different parties.

The appellant also contends that, in any event, the evidence

was insufficient to establish the agreement. While the evidence as to whether such an agreement was made or not is in direct conflict, we think that it preponderates in favor of the respondent. Three witnesses testified to the agreement; the appellant alone denied it. The trial court heard all of the evidence and observed the demeanor of the witnesses. In such cases we have repeatedly refused to disturb the decision of the trial judge unless we were able to say that it was clearly contrary to the weight of the evidence. Upon the whole record, we find nothing warranting a reversal.

The judgment is affirmed.

MAIN, MORRIS, and FULLERTON, JJ., concur.